254 N.J. Super. 350 (1992)
603 A.2d 542
EDNA DEEGAN, PLAINTIFF-APPELLANT,
v.
ROSS J. DEEGAN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted November 6, 1991.
Decided March 5, 1992.
*352 Before Judges LONG, BAIME and THOMAS.
Drazin & Warshaw, attorneys for appellant (Vincent L. Stripto, on the brief).
Donington, Karcher, Leroe, Salmond, Luongo, Ronan & Connell, attorneys for respondent (James J. McGuire, Jr., on the letter brief).
The opinion of the court was delivered by LONG, J.A.D.
We are called upon here to address the question of what standard should apply in determining whether unanticipated early retirement, or any other voluntary life style alteration, constitutes a change in circumstances warranting a support modification pursuant to Lepis v. Lepis 83 N.J. 139, 416 A.2d 45 (1980).

I
Plaintiff, Edna Deegan and defendant Ross Deegan were divorced in 1985. The Judgment of Divorce, which incorporated an oral property settlement agreement, provided, among others, that defendant would pay alimony to plaintiff in the amount of $250.00 per week. The agreement also provided that plaintiff would receive one-third of defendant's annual vacation pay and *353 one-third of the value of his pension from the proceeds of the sale of the marital home.
The parties honored the judgment until 1990 when defendant decided to retire and advised plaintiff by letter that he wished to amicably resolve the issue of alimony. For reasons unknown, plaintiff did not respond to his inquiry. On April 27, 1990, defendant retired, four months short of his 62nd birthday. On August 22, 1990, he moved for an order terminating alimony. In support of the motion, the 62-year old defendant filed a certification stating that he had previously shared his pension with his former wife thus eliminating that asset as a source for alimony. He set forth the reasons for his decision to retire:
In reaching the decision to retire I considered many factors. First of all, the steamfitter's union, for whom I had worked for 42 years, offered a single sum pension option which was quite attractive. Secondly, work at the time was very slow and there was a real possibility that I would be laid off. Thirdly, working as a steamfitter involves a great deal of physical labor, including bending, lifting, climbing, and working in the elements. On August 14, 1989, I turned 60 years of age and this sort of labor has become increasingly more difficult for me over the years.
According to defendant's certification, he received a lump sum pension distribution of $189,801.03 which he placed into an IRA for a total annual income of $13,106.25. He also stated that plaintiff, who had been unemployed at the time of the divorce was, at the time of the motion, earning $20,000.00 per year at Brookdale Community College.
Plaintiff responded to defendant's motion and filed a cross-motion to enforce the judgment of divorce as to alimony and vacation pay. She filed a certification indicating that defendant's decision to retire prior to the availability of social security benefits, left the parties with inadequate income. According to plaintiff, defendant had additional rental income and could have invested his pension to yield a better return. She characterized his decision to retire as totally voluntary and asked the court not to allow him to stop the support she needed to survive.
*354 Without a plenary hearing, the judge denied defendant's motion, and granted plaintiff's cross-motion reasoning as follows:
The plaintiff,  the defendant seeks to terminate his alimony obligation pursuant to a judgment of divorce dated November the 12th of 1985 which is $250.00 a week because he has decided to retire at age sixty. He suggests to the court that he took a lump-sum pension benefit and has now invested that which generates income of approximately $13,100.00 per year and that is the extent of his income vis a vis his 1989 income of $54,000.00.
Individuals who have obligations and in particular alimony and child support obligations cannot voluntarily retire and then say to the court, we have a substantial change of circumstances, I don't have the income to comply with the previous judgment of divorce. When he retired, he knew he had this obligation to this woman and he continues to have this obligation to this woman, and he will continue to pay the alimony of $250.00 per week.
He'll just have to secure some other additional work to supplement his pension of $13,100.00 which I'm sure will not be difficult for him. He's been in the labor market for forty-two years. He is a healthy individual. There's no allegations that he is in bad health. So he does have the ability. He'll just have to go out and find a job to generate the income. So his application to terminate alimony will be denied.
Defendant appeals, claiming that the trial judge erred in determining that he had failed to meet the burden of establishing that he had undergone changed circumstances within the meaning of Lepis, supra. In addition, he argues that in no event could such a conclusion have been reached in the absence of a plenary hearing. We agree and reverse.

II
Spousal support agreements are always subject to modification pursuant to N.J.S.A. 2A:34-23 upon a showing of changed circumstances. Lepis v. Lepis, supra, 83 N.J. at 145, 416 A.2d 45. The Lepis Court carefully outlined a procedure which litigants, as well as courts, must follow to modify support obligations. 83 N.J. at 157, 416 A.2d 45. A party seeking modification "must demonstrate that changed circumstances have substantially impaired the ability to support himself or herself." Id. at 157, 416 A.2d 45. An analysis of "changed circumstances" is not limited to what the parties might have *355 contemplated at the time of the divorce. To the contrary, the analysis focuses on "whether the change in circumstances is continuing and whether the agreement or decree has made explicit provision for the change." Id. at 152, 416 A.2d 45.
Whether circumstances have really changed so as to warrant modification requires a court to study the parties' financial condition at the time of the divorce, as well as at the time of the application. Id. at 157, 416 A.2d 45. Where the change is involuntary, all that is required is an analysis of the alterations in the parties' financial circumstances. However, where the change is a voluntary one, other considerations come into play.
The exact mechanics of evaluating a voluntary change in circumstances has not been settled. In Horton, Jr. v. Horton, 219 N.J. Super. 76, 529 A.2d 1034 (Ch.Div. 1987), an ex-husband sought relief from an alimony obligation after early retirement at age 56, one and one-half-years subsequent to the property settlement agreement with his former spouse. The trial judge rejected the application concluding that because early retirement took place such a short time after the parties' agreement was entered into, the husband should have specifically provided for such a contingency in the agreement. 219 N.J. Super. at 79, 529 A.2d 1034. More recently, in Dilger v. Dilger, 242 N.J. Super. 380, 576 A.2d 951 (Ch.Div. 1990), the trial judge, Judge Bassler, set forth with much more specificity the standards he deemed applicable in such an analysis:
It seems to this court that a better approach in assessing whether early retirement constitutes a change of circumstances is to inquire not only as to whether the retirement was in good faith but also whether, in light of all of the surrounding circumstances, it was reasonable for the supporting former spouse to elect early retirement. Relative to this inquiry are "the age, health of the party, his motives in retiring, the timing of the retirement, his ability to pay maintenance even after retirement and the ability of the other spouse to provide for himself or herself." In re Marriage of Smith, 77 Ill. App.3d 858, 33 Ill.Dec. 332, 336, 396 N.E.2d 859, 863 (App.Ct. 1979). Also significant are the reasonable expectations of the parties at the time of the agreement, evidence bearing on whether the supporting spouse was planning retirement at a particular age, and *356 the opportunity given to the dependent spouse to prepare to live on the reduced support. [Id. 242 N.J. Super. at 387-88, 576 A.2d 951.]
Many of these factors were gleaned from out-of-state cases which previously addressed the subject of elective retirement. These cases can be broadly characterized as falling into several different categories. The first is what might be denominated a bright line category. In those cases, the voluntariness of the change in circumstances, in itself, is viewed as barring an application for modification. In other words, if a party, not otherwise under compulsion, voluntarily chooses a change in life style which reduces his or her financial circumstances, he or she may not base an application for modification of an alimony award on that voluntary change. See, e.g., Shaughnessy v. Shaughnessy, 164 Ariz. 449, 793 P.2d 1116, 1118 (Ariz. Ct. App. 1990); Greene v. Greene, 547 So.2d 1302, 1303 (Fla. Dist. Ct. App. 1989); Servies v. Servies, 524 So.2d 678, 680 (Fla. Dist. Ct. App. 1988); Ward v. Ward, 502 So.2d 477, 478 (Fla. Dist. Ct. App. 1987). This rule has the virtue of simplicity, but little else. Indeed, it has been revisited in Florida, and rejected as "too severe." Pimm v. Pimm, 568 So.2d 1299, 1300 (Fla. Dist. Ct. App. 1990).
In the second category, voluntary retirement cases are evaluated solely based upon the motives of the party seeking to make the change. If the change is made in good faith, the application for modification is approved. Tydings v. Tydings, 349 A.2d 462, 463 (D.C. 1975); Lambert v. Lambert, 66 Wash.2d 503, 403 P.2d 664, 668 (1965). By comparison, a bad faith change, i.e., one based upon the desire to reduce alimony obligations, will be disapproved as a basis for modification. See In re Marriage of Sinks, 251 Cal. Rptr. 379, 204 Cal. App.3d 586 (Ct.App. 1988).
A variation on the good faith theme is found in the "sole purpose" category of cases. In these cases, it is said that if the "sole" motivation for the change is to avoid support obligations, good faith is absent. Commonwealth ex. rel Burns v. Burns, 232 Pa.Super. 295, 331 A.2d 768, 770 (Super.Ct. 1974). The problem with the sole purpose standard was recognized in *357 Sifers v. Sifers, 544 S.W.2d 269 (Mo. App. 1976) where the court opined that it is likely that a party moving for modification will always be able to advance at least one legitimate reason for retirement. In Smith v. Smith, 419 A.2d 1035 (Me. 1980), the Supreme Court of Maine adopted a "primary purpose" rule which included a Dilger like analysis:
The better rule appears to be that retirement of the payor spouse for the primary purpose of avoiding alimony does not of itself bring about the substantial change in the payor's circumstances needed to justify a reduction in alimony. Such a rule does not place an undue burden on the payor spouse who retires in complete good faith. On the other hand, as compared with the sole-purpose rule, the primary-purpose rule allows a more searching inquiry into the financial circumstances of the retiring party and makes it more difficult for a parsimonious payor spouse to disguise his motives for retiring. [419 A.2d at 1038.].
The final category includes cases in which any negative impact on the payee spouse is considered sufficient to bar modification based upon voluntary retirement. Moseley v. Moseley, 216 So.2d 852, 854 (La. Ct. App. 1968). See also Ellis v. Ellis, 262 N.W.2d 265 (Iowa 1978).
As can be seen, many of these categories overlap. For example, the sole and primary purpose cases are really good faith cases expressed another way. Likewise, the bright line cases are another articulation of negative impact. Regardless of the ultimate outcome, all of these courts have focused to one extent or another on two issues: the motive of the payor spouse and the effect on the payee.
We have grappled with this question and have concluded that the considerations enunciated In re Marriage of Smith, 77 Ill. App.3d 858, 862-63, 33 Ill.Dec. 332, 336, 396 N.E.2d 859, 863 (App.Ct. 1979) are a good starting point:
Relative factors are the age, health of the party, his motives in retiring, the timing of the retirement, his ability to pay maintenance even after retirement and the ability of the other spouse to provide for himself or herself.
We also agree with Judge Bassler in Dilger, supra, 242 N.J. Super. at 387-88, 576 A.2d 951, that the "reasonableness" of the early retirement should be a factor, as should the expectations of the parties and the opportunity of the dependent spouse to *358 prepare to live on the reduced support. In short, whether a spouse may voluntarily retire will depend on the individual circumstances of a particular case.
We have also concluded that, in the final analysis, even in a case in which the retiring spouse has been shown to have acted in good faith and has advanced entirely rational reasons for his or her actions, the trial judge will be required to decide one pivotal issue: whether the advantage to the retiring spouse substantially outweighs the disadvantage to the payee spouse. Only if that answer is affirmative, should the retirement be viewed as a legitimate change in circumstances warranting modification of a pre-existing support obligation.
Thus, where a payor spouse has substantial reasons for retiring (i.e., health concerns) and the effect on the payee spouse is minimal (due, for example, to other available income, qualifying for social security, or new employment) the balance will be struck in favor of the payor. Where, on the other hand, the payor spouse simply wants a new life and the payee spouse will become destitute without support, the payee's interests will prevail. Where the interests are in equipoise, the payor spouse's application will fail because he or she is unable to show that the advantage substantially outweighs the disadvantage to the payee. Each of these scenarios is straightforward. In most cases, the factors will be less obvious and the balancing process more complicated. Where the sole problem is timing, the trial judge may condition approval on a preparatory hiatus during which the movant may retire or not as he or she chooses but during which the financial obligations will continue.
This ruling should not be viewed as a limitation on freedom of choice or freedom of action. By it, the payor spouse whose good faith early retirement or other life style change would not deleteriously affect the former spouse is free to follow his or her star. Where a significant disadvantage to the payee spouse is foreseen, the payor spouse is still not precluded from such a change. Any party is free to retire, take a vow of poverty, *359 write poetry or hawk roses in an airport, if he or she sees fit. The only limitation is discontinuance of the financial aid the former spouse requires. The reason for this is that the duty of self-fulfillment must give way to the pre-existing duty which runs between spouses who have been in a marriage which has failed.
It goes without saying that issues of possible voluntary early retirement and the like should be resolved in the first instance at the time of the divorce in a negotiated agreement. No thoughtful matrimonial lawyer should leave an issue of this importance to chance and subject his or her client to lengthy future proceeding such as we have here.
Turning back to this case, we reverse and remand the matter to the trial judge for a full review of the financial circumstances of both parties in light of the standards we have set forth. He may accept further certifications or require a plenary hearing if there are disputed material facts in issue.
Reversed and remanded.