714 A.2d 981 (1998)
314 N.J. Super. 340
Stephen BOARDMAN, Plaintiff-Appellant,
v.
Elaine BOARDMAN, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted April 7, 1998.
Decided August 12, 1998.
*982 Elwell & Albino, Montclair, for plaintiff-appellant (Arlene F. Albino, on the brief).
Skoloff & Wolfe, for defendant-respondent (Brian M. Schwartz, Livingston, on the brief).
Before Judges KEEFE, PAUL G. LEVY and WECKER.
The opinion of the court was delivered by WECKER, J.A.D.
Plaintiff, Stephen Boardman, appeals from several provisions of a divorce judgment, specifically, the amount of permanent alimony to be paid by defendant, Elaine Boardman; automatic termination provisions with respect to alimony; and terms of joint custody and related counseling provisions. Plaintiff also appeals from the order denying his claim for counsel fees and expert's fees.[1] We affirm the custody and counseling provisions, *983 but reverse and remand for reconsideration the issues of alimony and counsel and expert fees. We also reverse the automatic termination-of-alimony provisions.
We shall not repeat the facts at length. However, we note that the parties were in their mid-forties when they divorced after a twenty-three year marriage that produced three children, who at the time of trial were 12, 10, and 5 years of age. Defendant is and always has been the wage earner, and the parties lived an upper middle class lifestyle. The judge found that defendant's earnings as the chief executive officer of Patient Care, Inc., were $275,000 per year, composed of salary plus bonuses, and exclusive of stock awards, stock options, 401K matching provisions, and other benefits.
Plaintiff has never earned more than token income, although he has graduate degrees in history from Columbia University, and in reading from Montclair State College (now University). Plaintiff has suffered for years from a serious depressive illness and has been diagnosed as "Bipolar II" with some underlying additional mental illness. He has been suicidal in the past, and has never been able to take full responsibility for the children, for whom defendant has hired a full-time babysitter. At the time of trial the judge recognized that plaintiff's earnings were less than $5,000 per year as an adjunct college teacher, although for several years he had worked essentially full-time as a volunteer at the children's cooperative nursery school.
Defendant voluntarily assumed the full and substantial cost of providing for the children, paying their private school tuition, maintaining the household, and maintaining medical insurance for the children and herself. Child support is not at issue in this appeal.
Plaintiff received a total of $158,000 in liquid assets by way of equitable distribution. Defendant received an equal amount, though not all in liquid form. With respect to the terms of custody, the parties agreed that defendant would be the residential custodian. The only custody question raised at trial was the characterization of plaintiff's custodial relationship.
We first address alimony. After imputing to plaintiff $20,000 in annual income and setting his needs at $42,000, the trial judge reduced the $39,000 pendente lite alimony award to $2,000 per month as permanent alimony. The judge found plaintiff's case information statement budget of $80,000 to be inflated and denied plaintiff's request to continue the pendente lite provision for medical insurance and an automobile lease at defendant's expense. The judge did order defendant to maintain a $200,000 life insurance policy for plaintiff's benefit as security for the alimony award.
In a divorce action, courts may award alimony "as the circumstances of the parties and the nature of the case shall render fit, reasonable and just...." N.J.S.A. 2A:34-23. The basic purpose of alimony is the continuation of the standard of living enjoyed by the parties prior to their separation. Innes v. Innes, 117 N.J. 496, 503, 569 A.2d 770 (1990) (citing Mahoney v. Mahoney, 91 N.J. 488, 501-02, 453 A.2d 527 (1982)). The supporting spouse's obligation is set at a level that will maintain that standard. Innes, supra, 117 N.J. at 503, 569 A.2d 770 (citing Lepis v. Lepis, 83 N.J. 139, 150, 416 A.2d 45 (1980)).
The Legislature has established the factors to be considered in setting permanent or rehabilitative alimony:
(1) The actual need and ability of the parties to pay;
(2) The duration of the marriage;
(3) The age, physical and emotional health of the parties;
(4) The standard of living established in the marriage and the likelihood that each party can maintain a reasonably comparable standard of living;
(5) The earning capacities, educational levels, vocational skills, and employability of the parties;
(6) The length of absence from the job market of the party seeking maintenance;
(7) The parental responsibilities for the children;
(8) The time and expense necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, the availability *984 of the training and employment, and the opportunity for future acquisitions of capital assets and income;
(9) The history of the financial or non-financial contributions to the marriage by each party including contributions to the care and education of the children and interruption of personal careers or educational opportunities;
(10) The equitable distribution of property ordered and any payouts on equitable distribution, directly or indirectly, out of current income, to the extent this consideration is reasonable, just and fair; and
(11) Any other factors which the court may deem relevant.
[N.J.S.A. 2A:34-23b(1)-(11), as amended effective January 8, 1998.]
The court did not consider the tax consequences of alimony, that is, plaintiff's obligation to report alimony payments as income and defendant's right to deduct the payments. Tax consequences are clearly a relevant factor under N.J.S.A. 2A:34-23b(11) (formerly subsection (10)). See Streader v. Streader, 18 N.J.Super. 433, 437, 87 A.2d 338 (App.Div.1952); Sheridan v. Sheridan, 247 N.J.Super. 552, 571, 589 A.2d 1067 (Ch.Div. 1990).
Nor do we find evidence that the court took into account, among other things, the parties' standard of living, or plaintiff's continuing medical and prescription drug expenses. While imputation of $20,000 income to plaintiff may be reasonable in the future, plaintiff's history is that of a man whose mental and/or emotional condition, despite his intellect and education, has left him with little earning capacity. An annual income of $20,000 appears unrealistic for defendant at present, at least without time to improve his earning ability, perhaps with an additional amount as rehabilitative alimony. Despite the substantial weight due a trial judge's observations of credibility, failure to consider all of the controlling legal principles requires a remand. See, e.g., Rolnick v. Rolnick, 262 N.J.Super. 343, 360, 621 A.2d 37 (App.Div. 1993). While we do not suggest that gender played any role in the trial judge's decision, we take this opportunity to note that whether the spouse "seeking maintenance" pursuant to the statute is the husband or the wife, the factors to be considered remain the same and are unquestionably gender neutral.
The trial judge also ordered that the alimony obligation would terminate upon defendant's retirement or upon plaintiff's cohabitation with an unrelated female. He said, "the retirement of Mrs. Boardman from full-time employment or the cohabitation of Mr. Boardman will resultand that's with an unrelated female adult, at least initially identifiedwill result in an automatic termination, not suspension of alimony, termination of alimony." Those prospective termination provisions are contrary to the law that has developed under Lepis v. Lepis, 83 N.J. 139, 416 A.2d 45 (1980), and its progeny, based upon N.J.S.A. 2A:34-23. Ignoring the parties' actual circumstances upon the happening of such future events was error. Those provisions must be vacated.
The case law is clear with respect to retirement as a changed circumstance. In Deegan v. Deegan, 254 N.J.Super. 350, 603 A.2d 542 (App.Div.1992), the supporting spouse elected early retirement and sought to modify his alimony obligation based on changed circumstances. We held that in determining whether to modify alimony based upon retirement as a changed circumstance under Lepis, the "pivotal" issue is whether the advantage to the retiring spouse substantially outweighs the disadvantage to the payee spouse. 254 N.J.Super. at 358, 603 A.2d 542. We concluded: "Only if that answer is affirmative, should the retirement be viewed as a legitimate change in circumstances warranting modification of a pre-existing support obligation." Id. We therefore remanded for review of the financial circumstances of the parties. Id. at 359, 603 A.2d 542.
In Silvan v. Sylvan, 267 N.J.Super. 578, 632 A.2d 528 (App.Div.1993), the supporting spouse appealed the denial of his postjudgment motion to modify alimony on account of his retirement. We held that "in certain circumstances, good faith retirement at age sixty-five may constitute changed circumstances for purposes of modification of alimony and ... a hearing should be held to determine whether a reduction in alimony is *985 called for." Id. at 581, 632 A.2d 528. See also Dilger v. Dilger, 242 N.J.Super. 380, 391, 576 A.2d 951 (Ch.Div.1990), where the court found that the supporting spouse's early retirement was neither undertaken in good faith nor otherwise reasonable under the circumstances and therefore denied modification of alimony. Id. at 391, 576 A.2d 951.
Plaintiff's financial dependence will not automatically terminate when defendant stops working. Nor will defendant's ability to pay. Any modification should abide the event, especially here, where the supporting spouse is many years away from normal retirement age.
The law does not support the automatic termination of court-ordered alimony upon cohabitation with an unrelated female. The Supreme Court in Gayet v. Gayet, 92 N.J. 149, 456 A.2d 102 (1983), held that cohabitation constituted changed circumstances under Lepis, justifying discovery and a hearing for modification of alimony. 92 N.J. at 154-55, 456 A.2d 102. The test is whether "one cohabitant supports or subsidizes the other under circumstances sufficient to entitle the supporting spouse to relief." Id. at 153-154, 456 A.2d 102. See also Ozolins v. Ozolins, 308 N.J.Super. 243, 247, 705 A.2d 1230 (App.Div.1998). Our recent decision in Konzelman v. Konzelman, 307 N.J.Super. 150, 704 A.2d 591 (App.Div.) certif. granted, 153 N.J. 405, 709 A.2d 798 (1998) is distinguishable. There we held that "a provision of a property settlement agreement, freely entered into, which causes permanent alimony to terminate if the dependent spouse enters into a new relationship which has all the indicia of marriage except a license, is enforceable." Id. at 161, 704 A.2d 591 (emphasis added). Here the disputed provision was not freely entered into, but was imposed by the court.
If plaintiff cohabits with another woman, defendant will have the opportunity to seek a reduction in alimony by obtaining discovery and showing either that plaintiff's economic needs have decreased because the woman is contributing to his support, or that he is subsidizing her at defendant's expense. It is impermissible for the court to assume in advance, and in the absence of a factual context, that cohabitation would eliminate plaintiff's need.
We reject plaintiff's contentions regarding the custody and counseling provisions, and those provisions are affirmed. The judge awarded the parties joint legal custody, and held that "[m]ajor decisions affecting the children's lives will be discussed between both parents.... However, the mother will make the final decisions for all issues surrounding the children." Nevertheless, "[defendant] will not always control the father's time with the children." Plaintiff maintains that these limitations are inconsistent with the rights otherwise afforded a parent with joint custody, and that the judge erred in placing limitations on his role as joint custodian of the children.
"Joint custody" can take many forms. See generally Pascale v. Pascale, 140 N.J. 583, 595-600, 660 A.2d 485 (1995). Under joint custody, the legal authority and responsibility for making "major" decisions regarding the children's welfare is shared by both parents. Id. at 596, 660 A.2d 485; Beck v. Beck, 86 N.J. 480, 487, 432 A.2d 63 (1981). The primary caretaker logically has the greater role in day-to-day decisions, Pascale, supra, 140 N.J. at 599, 660 A.2d 485, and ordinarily has somewhat more authority to decide issues in the event of a disagreement. Brzozowski v. Brzozowski, 265 N.J.Super. 141, 147, 625 A.2d 597 (Ch.Div.1993).
Here, despite the award of "joint custody," defendant was given broad decision-making power. However, under the circumstances, there was ample credible evidence to support the discretionary decision to limit plaintiff's custodial powers. Three neutral witnesses testified that plaintiff was irresponsible in picking up his children on time, and on several occasions, including once at the seashore, had failed to supervise them properly. Plaintiff admitted that he did not always foresee the consequences of his actions. Dr. Paul Syracuse testified that plaintiff's judgment with respect to child care was defective when he did not maintain prescribed medications, and that he was not capable of "meaningful input" on decisions concerning the children. We find no error in the trial *986 judge's exercise of discretion regarding custody and therefore no grounds to disturb that decision.
The judge also ordered that the parties attend counseling with Dr. Syracuse, seek his advice before seeking court intervention on any parenting issue, and share the cost of his services. "If a party refuses or cancels attendance with Dr. Syracuse, then the complying party will seek immediate access to the Court for relief and sanction." Plaintiff seeks to vacate the obligation of the parties to attend counseling with Dr. Syracuse. Plaintiff maintains that the parties should have been able to select their own counselor, and that it is "patently unfair to restrict a litigant's right to access the court by imposing conditions and economic sanctions on that right." The counseling requirement, including the selection of the independent counselor, is well within a reasonable exercise of judicial discretion and will not be disturbed.
Lastly, we address the issues of counsel fees and expert fees. Plaintiff's attorney submitted an affidavit in support of counsel fees of $32,000 and a $2,500 psychiatric expert's fee. Plaintiff paid $20,400, borrowed from relatives. The judge denied plaintiff's requested fee award.
Plaintiff argues that due to his employment history and the effect of his psychological problems on his ability to work, he has greater financial need than defendant, whose earned income of $275,000 per year gives her a much greater ability to pay. Plaintiff also contends that a large portion of the fees he incurred resulted from defendant's unreasonable positions concerning alimony and custody. Defendant contends that plaintiff has the ability to pay, having received all of the liquid assets of the marriage and having been relieved of any responsibility for the support of the children. Defendant also argues that it was plaintiff who acted in bad faith by repeatedly violating restraining orders and seeking joint custody.
An award of counsel fees is within the discretion of the trial court. Williams v. Williams, 59 N.J. 229, 233, 281 A.2d 273 (1971). In determining whether a counsel fee should be imposed, the court must look at the requesting party's need, the other party's ability to pay, and the good and bad faith of each party. N.J.S.A. 2A:34-23; Williams, supra, 59 N.J. at 233, 281 A.2d 273; Kothari v. Kothari, 255 N.J.Super. 500, 513, 605 A.2d 750 (App.Div.1992). We see no evidence of such analysis, nor any expressed reasons for the ruling. We are therefore unable to determine whether the judge abused his discretion. See Salch v. Salch, 240 N.J.Super. 441, 443, 573 A.2d 520 (App.Div.1990). We therefore remand that issue for further consideration and explanation.
Paragraph one of the judgment, addressing custody and counseling, is affirmed. Paragraph four, addressing alimony, is reversed and remanded for reconsideration of the amount of alimony to be paid, and to vacate conditions for future termination of alimony. The order denying counsel and expert fees is also reversed and remanded for reconsideration.
We do not retain jurisdiction.
NOTES
[1] Equitable distribution was settled between the parties and is not an issue on appeal, except insofar as it affects the alimony decision.