**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2515-17T2

BELLA FRANGIPANE,

    Plaintiff-Appellant,

v.

RICHARD FRANGIPANE,

    Defendant-Respondent.

_____

        Submitted December 19, 2018 – Decided January 9, 2019

        Before Judges Nugent and Mawla.

        On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-1092-96.

        Bella Frangipane, appellant pro se.

        Kantrowitz, Goldhamer & Graifman, PC, attorneys for respondent (William T. Schiffman, on the brief).

PER CURIAM

    Plaintiff appeals from May 26, September 8, and December 1, 2017

orders, which granted defendant's motion to terminate alimony due to retirement

and enforced plaintiff's obligation to pay her portion of college tuition for the parties' daughter. We affirm.

The following facts are taken from the motion record. The parties were married in 1973 and divorced in 1997. The judgment of divorce incorporated a marital settlement agreement (MSA) executed shortly before the divorce.

The MSA required defendant to pay plaintiff $900 per week in alimony and stated "[t]his obligation shall cease upon the death of the [h]usband, the death of the [w]ife or the remarriage of the [w]ife. Either party shall have the right to make application to the [c]ourt for an increase or decrease in the amount of alimony based upon a change in circumstances." Regarding their daughter's college education, the MSA stated

> the [h]usband and [w]ife, to the extent that each shall be financially able, shall pay for or contribute to said post-secondary education[.] . . . The choice of the institution is to be agreed upon between the [h]usband, the [w]ife, and the child involved. If there is any dispute as to whether either party is financially able or to the extent of either party's financial ability to contribute or pay for said education, such dispute may be submitted to a [c]ourt of competent jurisdiction.

Additionally, the MSA addressed equitable distribution, and ultimately, plaintiff received $1,714,148.24 as her share of the marital assets.

At the time of the divorce, plaintiff was forty-nine years of age and defendant was fifty-five. Plaintiff owned a card shop, which closed in 2002 or 2003. Plaintiff's search for employment was unsuccessful. She then attempted to start an on-line gift-basket business. However, the business discontinued after two years of operation. In 2006, plaintiff attempted to start an online jewelry business, which closed in 2012. Despite plaintiff's investments in the various business ventures, she operated at a loss between 2004 and 2014. As a result, she made multiple withdrawals from the retirement and pension funds she received in equitable distribution.

The parties' daughter resided with plaintiff at the time of the divorce and the MSA required defendant to pay child support. In 2013, the parties' daughter turned eighteen and moved into defendant's residence. In the fall of 2014, she began attending college. As a result of this change in circumstances, defendant ceased paying child support.

In subsequent motion practice, plaintiff was ordered to pay child support and contribute to the college obligation. Specifically, on December 3, 2015, the court entered an order requiring "plaintiff [to] use [her] $18,000 account . . . to pay 25% of [her daughter's] current and future college tuition," to pay $40 dollars per week to defendant in child support, and decreasing defendant's

alimony from $900 to $700 per week. Plaintiff sought reconsideration of the order, which was denied on March 21, 2016. Subsequently, plaintiff appealed from the March 2016 order and we affirmed. See Frangipane v. Frangipane, No. A-3590-15 (App. Div. Sept. 1, 2017) (slip op. at 7). Another order was entered on October 11, 2016, enforcing plaintiff's obligation to pay for college. A fourth order, entered on May 26, 2017, set the amount due from plaintiff for the college expenses at $6047 based on the December 3, 2015 order.

In May 2017, defendant filed a motion to terminate alimony and enforce plaintiff's obligation to pay the $6047 for the college costs. Defendant certified he had suffered a significant change of circumstance due to his poor health and retirement at the age of seventy-five, which warranted termination of alimony. Plaintiff cross-moved for discovery and enforcement of alimony.

Following oral argument, the motion judge entered an order on September 8, 2017, scheduling a plenary hearing to address defendant's request to terminate alimony and all of plaintiff's requests in the cross-motion. The order also denied plaintiff relief from all of the prior orders requiring her to contribute to college expenses, and enforced her obligation to pay the $6047 by suspending defendant's alimony payments until the sum was met in the form of an alimony credit to defendant.

A-2515-17T2

In October 2017, before a hearing could occur, defendant filed a motion, which in pertinent part, argued a plenary hearing was not required in order to terminate alimony. Plaintiff cross-moved, in pertinent part, for an upward modification of alimony and relief from the previous orders requiring her to contribute to the college expenses. On December 1, 2017, following oral argument, the motion judge entered an order terminating defendant's alimony obligation and denying plaintiff relief from the previous orders requiring her contribution to the college expenses. This appeal followed.

I.

"Appellate courts accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). "We do 'not disturb the "factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice."'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (alterations in original) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). Therefore, "'[o]nly when the trial court's conclusions are so "clearly mistaken" or "wide of the mark" should we

A-2515-17T2

interfere[.]'" Ibid. (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)). However, "all legal issues are reviewed de novo." Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017) (citing Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

On appeal, plaintiff raises the following points: (1) the motion judge should have considered her health issues before terminating alimony pursuant to N.J.S.A. 2A:34-23(j)(3), whereas defendant's health was not an issue because he is retired and can afford to pay alimony; (2) there is no evidence plaintiff could have saved for her retirement, or that she squandered her equitable distribution, because her failed business ventures occurred before the divorce and her post-judgment expenditure of assets was to fund litigation engendered by defendant and to care for the parties' daughter while she was living with plaintiff; (3) the judge did not address the level of plaintiff's financial independence before terminating alimony; (4) the judge's findings that the parties did not expect defendant to continue working were erroneous because the MSA permits a termination of alimony only on either plaintiff or defendant's death, and a retirement would only result in a modification; (5) alimony should not have been terminated because defendant has the ability to pay it from his retirement funds; (6) plaintiff was denied due process because she was ordered

6

to contribute to college, but had not been consulted in the college selection process as required by the MSA; (7) the judge erred by not limiting plaintiff's college contribution obligation to $18,000 and instead assigning twenty-five percent of the college expenses, which represents sixty-nine percent of her income because of the termination of alimony; and (8) plaintiff urges us to exercise original jurisdiction to decide her claims.

## II.

As a general proposition, because marital settlement agreements are voluntary and consensual, they are presumed valid and enforceable. See Massar v. Massar, 279 N.J. Super. 89, 93 (App. Div. 1995). Therefore, "[d]espite an agreement to provide spousal support without limitation as to time, '[t]he duties of former spouses regarding alimony are always subject to review or modification by our courts based upon a showing of changed circumstances.'" Glass v. Glass, 366 N.J. Super. 357, 370 (App. Div. 2004) (quoting Miller v. Miller, 160 N.J. 408, 419 (1999)); see also N.J.S.A. 2A:34-23 (support orders "may be revised and altered by the court from time to time as circumstances may require.").

"The party seeking modification has the burden of showing such 'changed circumstances' as would warrant relief from the support or maintenance

provisions involved." Lepis v. Lepis, 83 N.J. 139, 157 (1980) (citation omitted). A court is required to hold a plenary hearing where the moving party has demonstrated a prima facie change in circumstances. Ibid. "[P]rima facie [evidence] is . . . evidence that, if unrebutted, would sustain a judgement in the proponent's favor." Baures v. Lewis, 167 N.J. 91, 118 (2001). The proper inquiry is "whether the change in circumstance is continuing and whether the agreement or decree has made explicit provision for the change." Lepis, 83 N.J. at 152.

N.J.S.A. 2A:34–23(j)(3) states: "When a retirement application is filed in cases in which there is an existing final alimony order or enforceable written agreement established prior to the effective date of this act, the obligor's reaching full retirement age as defined in this section shall be deemed a good faith retirement age." Pursuant to the statute, "'[f]ull retirement age' shall mean the age at which a person is eligible to receive full retirement for full retirement benefits under . . . the federal Social Security Act[,]" which is sixty-two to sixty-six years of age with respect to an individual who attains early retirement age after December 31, 2004, and before January 1, 2017. N.J.S.A. 2A:34–23; 42 U.S.C.A. § 416(l).

"An income reduction resulting from a 'good faith retirement' after age sixty-five is a well-recognized change of circumstances event, prompting a detailed review of the financial situation facing the parties to evaluate the impact retirement has on a preexisting alimony award." Landers v. Landers, 444 N.J. Super. 315, 320 (App. Div. 2016) (quoting Silvan v. Sylvan, 267 N.J. Super. 578, 581 (App. Div. 1993)). "[I]n determining whether to modify alimony based upon retirement as a changed circumstance under Lepis, the 'pivotal' issue is whether the advantage to the retiring spouse substantially outweighs the disadvantage to the payee spouse." Boardman v. Boardman, 314 N.J. Super. 340, 346 (App. Div. 1998) (quoting Deegan v. Deegan, 254 N.J. Super. 350, 358 (App. Div. 1992)).

N.J.S.A. 2A:34-23(j)(3) sets forth factors for the court's consideration to determine whether an alimony obligor has demonstrated modification or termination of alimony is appropriate:

> (a) The age and health of the parties at the time of the application;
>
> (b) The obligor's field of employment and the generally accepted age of retirement for those in that field;
>
> (c) The age when the obligor becomes eligible for retirement at the obligor's place of employment, including mandatory retirement dates or the dates upon

which continued employment would no longer increase retirement benefits;

(d) The obligor's motives in retiring, including any pressures to retire applied by the obligor's employer or incentive plans offered by the obligor's employer;

(e) The reasonable expectations of the parties regarding retirement during the marriage or civil union and at the time of the divorce or dissolution;

(f) The ability of the obligor to maintain support payments following retirement, including whether the obligor will continue to be employed part-time or work reduced hours;

(g) The obligee's level of financial independence and the financial impact of the obligor's retirement upon the obligee; and

(h) Any other relevant factors affecting the parties' respective financial positions.

In Landers, we noted

> the rebuttable presumption included in subsection (j)(1), which places the burden on the obligee to demonstrate continuation of the alimony award once an obligor attains full retirement age, N.J.S.A. 2A:34–23(j)(1), is not repeated, but replaced by a different standard in subsection (j)(3). The latter provision follows the prior principles outlined in Lepis and its progeny, by mandating "the court shall consider the ability of the obligee to have saved adequately for retirement as well as the following factors in order to determine whether the obligor, by a preponderance of the evidence, has demonstrated that modification or termination of alimony is appropriate[.]" . . .

Importantly, subsection (j)(3) elevates the ability of the obligee to have saved adequately for retirement, listed only as a factor under N.J.S.A. 2A:34–23(j)(1)(j), setting it apart from other considerations and requiring its explicit analysis. N.J.S.A. 2A:34–23(j)(3).

[444 N.J. Super. at 323-24 (emphasis in original) (citation omitted).]

At the outset, we note the parties waived a plenary hearing. As a result, the motion judge evaluated the (j)(3) factors based upon their written submissions, and we are satisfied the decision to terminate alimony was not an abuse of discretion.

The motion judge considered that defendant was seventy-five. He also considered defendant's health, and noted he had cardiac problems, a pacemaker, was hospitalized for cardiac arrhythmia, and required thirteen different medications. Plaintiff did not rebut this evidence.

In her certifications, plaintiff provided the judge a description of her recurring health conditions. She stated she had a "decreased level of energy which accompanies the age of [seventy,]" suffered from arthritis for the past forty-five years, had been hard of hearing since the age of five, and suffered from depression since her forties. Plaintiff also certified she had other long-lasting issues, including sleep apnea, diabetes, a thyroid-condition, and memory loss.

The motion judge did not explicitly address plaintiff's health conditions. However, the record is self-evident her conditions existed long before any modification of alimony was sought, and some conditions existed before the parties had divorced. They do not justify denying defendant's motion on account of his changed circumstances.

As for plaintiff, the record demonstrates, the more relevant issue was her expenditure of equitable distribution and failure to save. In this regard, the motion judge noted "[p]laintiff took I.R.A. distributions for about [eleven] years beginning in 2001. She withdrew [$]36,000 from her account between 2002 and 2005. . . . [S]he withdrew $29,388 [in 2006], $18,341 in 2008, $39,997 in 2012, $17,128 in 2013, $60,333 in 2014 and $49,739 in 2015."

The judge addressed the reasonable expectations of the parties and concluded

> [the divorce is] now [twenty] years ago, [p]laintiff and [] defendant received an equal substantial amount of equitable distribution and again, [] plaintiff used most of hers.
>
> Plaintiff had no reasonable expectation that [] defendant would work forever nor that things would not change when he retired and he certainly had every reason to believe that at the time of the equitable distribution [] plaintiff would not dissipate and spend and use up any amount between [one] million and $1,714,148.24.

12

Addressing plaintiff's level of financial independence, the judge stated:

> [P]laintiff has made a number of risky investments, squandered a substantial amount of money either through equitable distribution or subsequently gifted including that $300,000 loan on the house that was bought for . . . [$]345,000 in which she took a $40,000 mortgage, [$]300,000 and then that was forgiven so basically you have [$]345,000 in equity in the home. And that's in [] plaintiff's deposition of July 20, 2017, page 35.
>
> So although she claims she is financially dependent on [] defendant, her claim, this [c]ourt finds is unreasonable because she had the opportunity to adequately save for her retirement.

The motion judge considered plaintiff's contention that defendant had the ability to continue paying alimony. He noted:

> [Defendant] has certified and I do not have evidence to the contrary, that his income currently derives from taxable I.R.A. distributions, an annuity, Social Security, interest and dividends from assets. It says he is unable to continue to pay [] plaintiff. Again, and we stated this earlier and it's not in dispute as I understand it, he's not working part time or reduced work hours and again, as the Appellate Division noted, his current financial status is a result of investments and saving as opposed to [] plaintiff's, which was spending.

The motion judge also made findings under the balance of the (j)(3) factors as follows:

> The generally accepted age of retirement is between [sixty-two and sixty-five]. [A prior motion

judge] noted two years ago and the Appellate Division noted that [] defendant could have retired and received full retirement benefits eight years ago but continued to work.

As I've already indicated a couple of times, it is not disputed that [] defendant has retired and as [the prior judge] noted, going back to the health, [] defendant's health has been deteriorating over the years. So the difference from two years ago and now in addition to everything else as I indicated, [] defendant is two years older, his health is not better and he[] certainly is of the retirement age, which the Appellate Division addressed.

. . . [Defendant] worked many years passed the point that he needed to, I'm assuming he really liked his employment, liked the job, liked what he did for a living but his motives for retiring were health related, that's what he submits to the [c]ourt, he worked full time for [fifty-three] years and in his certification . . . he says he lacks the energy and stamina to continue the work.

We reject plaintiff's contention that alimony could not be terminated on the grounds of retirement because the MSA did not indicate as much. The MSA states "[e]ither party shall have the right to make application to the [c]ourt for an increase or decrease in the amount of alimony based upon a change in circumstances." More importantly, even where there is express language barring modification or termination based on a change in circumstances, the court is not without the ability to modify an agreement. See Morris v. Morris, 263 N.J.

Super. 237, 245-46 (App. Div. 1993). "The equitable authority of a court to modify support obligations in response to changed circumstances . . . cannot be restricted." Lepis, 83 N.J. at 149 (citing Smith v. Smith, 72 N.J. 350, 360 (1977)); see also N.J.S.A. 2A:34-23.

The decision to terminate alimony on the basis of defendant's retirement was supported by sufficient credible evidence in the record. The motion judge's application of N.J.S.A. 2A:34-23(j)(3) was not an abuse of discretion.

## III.

Finally, we reject plaintiff's claim the enforcement of her obligation to contribute to college warrants reversal. This claim has already been adjudicated with finality and is barred by res judicata.

Res judicata "provides that 'a cause of action between parties that has been finally determined on the merits by a tribunal having jurisdiction cannot be relitigated by those parties . . . in a new proceeding.'" Innes v. Carrascosa, 391 N.J. Super. 453, 489 (App. Div. 2007) (alteration in original) (citing Velasquez v. Franz, 123 N.J. 498, 505 (1991)).

> There are three basic elements to res judicata: (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of

the same transaction or occurrence as the claim in the earlier one.

> [Rippon v. Smigel, 449 N.J. Super. 344, 367 (App. Div. 2017) (citing Velasquez, 123 N.J. at 505-06).]

Here, the initial order requiring "plaintiff [to] use [her] $18,000 account . . . to pay [twenty-five percent] of [her daughter's] current and future college tuition . . . and reasonable college expenses" was entered by the prior motion judge on December 3, 2015. Plaintiff's attempts to challenge the order, at first through reconsideration, and then on appeal, have been denied and are final.

Furthermore, the motion judge did not modify plaintiff's obligation when he enforced her obligation to pay her share of the college expenses. The prior motion judge had already determined the sum owed by plaintiff and the judge here deducted the sum plaintiff had already paid, leaving a $6047 balance, which was satisfied by deducting the sum from her alimony receipts. For these reasons, the motion judge was not required to revisit and recalculate the college obligation anew and did not abuse his discretion.

To the extent we have not addressed other arguments raised by plaintiff it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2515-17T2