**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1184-17T1

BONNIE IMPOSIMATO,

    Plaintiff-Respondent,

v.

BIAGIO IMPOSIMATO,

    Defendant-Appellant.

_____

Submitted January 8, 2019 – Decided April 11, 2019

Before Judges Suter and Geiger.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-0397-04.

Tournour & Weiner, attorneys for appellant (Frank E. Tournour, on the brief).

Bonnie Imposimato, respondent pro se.

PER CURIAM

    Defendant Biagio Imposimato appeals from a Family Part order that denied his cross-motion to terminate or modify his payment of permanent

alimony. He claimed he could no longer pay alimony because he was forced to close his business and then retire. Applying the factors under N.J.S.A. 2A:34-23(j)(3) to factual findings made at the plenary hearing, the Family Part judge ordered defendant to continue paying alimony, even though defendant's retirement was undertaken in good faith, because continued payments would not negatively affect him economically but terminating or reducing alimony for plaintiff Bonnie Imposimato would pose a significant hardship for her. We affirm.

I

After twenty-three years of marriage, plaintiff and defendant divorced in 2004. The amended judgment of divorce (AJOD) incorporated their property settlement agreement. It required defendant to "pay permanent alimony to . . . plaintiff in the amount of $40,000[] per year, in monthly installments . . . of $3333.33." Defendant was sixty-four and plaintiff was fifty-seven when the divorce was entered. The AJOD did not address what to do in the event that defendant retired.

Both parties were actively employed on a full-time basis when they divorced. Defendant was the sole shareholder in a corporation, DMCC Services, Inc., that had contracted with two large companies to unload their trucks at

warehouses. Plaintiff was employed as a planning board secretary for a local municipality. They had two adult children.

Under the AJOD, plaintiff kept the marital residence and her pension, although she was required to remove defendant's name from a $30,000 home equity loan by refinancing it and also to pay him an additional $14,000. She was responsible for paying off the $50,000 credit card debt. Defendant kept his business, which was valued at $500,000, and was entitled to keep all the investment accounts.

In July 2015, DMCC unexpectedly lost its last client and defendant was forced to close the business, laying off all the employees, including family members. He was then seventy-five and plaintiff was sixty-eight.

Defendant stopped paying alimony. In September 2015, he filed a motion to modify his alimony obligation. In March 2016, when that motion was heard, defendant was ordered to pay four months of alimony arrears and both parties were ordered to attend mediation. Attempts by the attorneys to arrange mediation dragged on and no mediation occurred.

In July 2016, plaintiff filed a motion to dismiss defendant's earlier motion, to compel him to pay alimony and arrears that continued to accrue, to pay her attorney's fees, and for sanctions for not complying with the mediation order.

A-1184-17T1

Shortly after, defendant filed a cross-motion in opposition and requested counsel fees. The Family Part judge held a plenary hearing. On October 25, 2017, he denied defendant's request to terminate his alimony obligation, ordering him to pay all arrears and resume regular alimony payments. Defendant appeals that order.[1]

Defendant's position at the plenary hearing was that he should not be required to continue to pay alimony because his income was reduced to $46,000 annually, consisting of social security and required distributions from an IRA. He opposed being required to pay alimony from his savings and investments. These amounted to over four million dollars, comprised largely of liquid assets, real estate in Florida, and several cars and watches, including a Rolex. Defendant was seventy-seven years old when the plenary hearing was conducted. He had health problems that prevented him from undertaking

---

[1] In a later order, defendant was required to pay $15,000 of plaintiff's attorney fees. Because defendant did not appeal that order or address it in his brief, he has waived the ability to appeal it. See N.J. Dept. of Envtl. Prot. v. Alloway Twp., 438 N.J. Super. 501, 505-06 n.2 (App. Div. 2015) (providing that "[a]n issue that is not briefed is deemed waived upon appeal"); Liebling v. Garden State Indem., 337 N.J. Super. 447, 465-66 (App. Div. 2001) (citing Matter of Bloomingdale Convalescent Ctr., 223 N.J. Super. 46, 48 n.1 (App. Div. 1999)) (providing that we will not "consider matters not properly raised below" unless the issue is of "sufficient public concern").

physical labor. He no longer could perform the type of work he had done for DMCC.

Defendant blamed plaintiff for her difficult financial situation. Throughout the course of their marriage, she had amassed significant credit card debt. He claimed this was a major issue leading to their divorce. Defendant testified that at two separate times while they were married, he paid-off a total of $100,000 in credit card debt. He also paid for their older daughter's college education and paid for their younger daughter's car and car insurance. After the divorce, plaintiff continued working full time and inherited funds from her mother's estate. Defendant argued that it was plaintiff's inability to manage money and her uncontrolled spending that created her financial straits and that she had ample opportunity to save for retirement.

When the plenary hearing was conducted, plaintiff earned a $70,000 annual salary and collected social security. Plaintiff explained that upon the divorce, she was required to refinance the mortgage to take defendant's name off the home equity loan and to pay him $14,000. Their younger daughter had drug problems. Plaintiff paid over $100,000 for drug treatment programs at different facilities for her. That daughter continued to live with plaintiff. She also had a child, the parties' grandchild, who lived with plaintiff. She was not

working full time; she suffered from health issues as did the grandchild. Plaintiff paid for all of their food, clothing and unreimbursed medical expenses as well as all the expenses of the house. She charged these expenses because her salary was not enough to cover all of them. For two and a half years, defendant's mother also was living with plaintiff.

Plaintiff testified that she was not a good money manager, but that the credit card debt incurred during the marriage and post-judgment were for family expenses. She testified "I bought things that were needed for our family, our home, our children, the house." She acknowledged that the house now had a $415,000 mortgage, was at or near foreclosure, that she had borrowed money from her pension and was paying it back, that she used up her portion and more of the inheritance from her mother's estate and owed taxes to the government. Plaintiff testified that when she divorced, she was not knowledgeable about the household monthly bills because defendant paid them. She did not plan to financially support the younger daughter, to have her mother-in-law live with her, to financially support their grandson or to contribute to the cost of drug rehabilitation for the younger daughter. All of these were unplanned expenses.

The court considered the factors under N.J.S.A. 2A:34-23(j)(3) in holding that defendant was required to continue to pay permanent alimony in the amount

A-1184-17T1

agreed to in the AJOD. The Family Part judge found "that defendant's retirement was done in good faith, based on a genuine loss of his business accounts," and that it was not reasonable to expect defendant to find other employment given his age, health and savings. The court considered that defendant had the ability to pay alimony from other passive sources such as rentals or investments. In considering the plaintiff's situation, although she was not good at handling money, a great deal of plaintiff's money was spent "trying to help her daughter and support her grandson." She had made some "poor economic decisions" about her mother's house and other assets. The court found based on the totality of the circumstances that given defendant's financial circumstances, there would be "little consequences to . . . defendant or his lifestyle" but "great hardship to . . . plaintiff" if the alimony payments were stopped.

On appeal, defendant contends the court improperly concluded that his good faith retirement did not warrant termination or modification of his alimony. He argues the court improperly weighed the factors under N.J.S.A 2A:34-23(j)(3) in reaching its decision. He claims the court erred by finding that plaintiff did not have the ability to save for retirement. Our thorough review of the record shows that the court did not abuse its discretion in ordering that

7

defendant was required to continue to make alimony payments in the amount agreed to in the AJOD.

II

We accord "great deference to discretionary decisions of Family Part judges," Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012), in recognition of the "family courts' special jurisdiction and expertise in family matters." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). We are bound by the trial court's factual findings so long as they are supported by sufficient credible evidence. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (citing In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Hitesman v. Bridgeway, Inc., 218 N.J. 8, 26 (2014) (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Defendant's agreement to pay plaintiff $40,000 per year in permanent alimony was part of the property settlement agreement that was incorporated into the AJOD. No one disputes that the agreement was voluntary and

consensual.  It is presumed to be valid and enforceable.  See Massar v. Massar, 279 N.J. Super. 89, 93 (App. Div. 1995).

A court can modify an agreement for alimony where there is a showing of changed circumstances.  Quinn v. Quinn, 225 N.J. 34, 49 (2016) (citing Berkowitz v. Berkowitz, 55 N.J. 564, 569 (1970)); see also Lepis v. Lepis, 83 N.J. 139, 146 (1980); N.J.S.A. 2A:34-23(a).  "An income reduction resulting from a 'good faith retirement' after age sixty-five is a well-recognized change of circumstances event, prompting a detailed review of the financial situation facing the parties to evaluate the impact retirement has on a preexisting alimony award." Landers v. Landers, 444 N.J. Super. 315, 320 (App. Div. 2016) (quoting Silvan v. Sylvan, 267 N.J. Super. 578, 581 (App. Div. 1993)).  "[I]n determining whether to modify alimony based upon retirement as a changed circumstance under Lepis, the 'pivotal' issue is whether the advantage to the retiring spouse substantially outweighs the disadvantage to the payee spouse."  Boardman v. Boardman, 314 N.J. Super. 340, 346 (App. Div. 1998) (quoting Deegan v. Deegan, 254 N.J. Super. 350, 358 (App. Div. 1992)).

The court is required to examine and weigh a list of objective considerations when it reviews an alimony termination or modification request for an obligor who has retired.  Landers, 444 N.J. Super. at 321.  If the alimony

9

order pre-dates September 10, 2014, the request for modification or termination must be reviewed under N.J.S.A. 2A:34-23(j)(3). That section expressly requires "in making its determination, that the court shall consider the ability of the obligee to have saved adequately for retirement . . . [and] whether the obligor, by a preponderance of the evidence, has demonstrated that modification or termination of alimony is appropriate[.]" N.J.S.A. 2A:34-23(j)(3). The obligee's ability to have adequately saved is set "apart from other considerations and require[s] . . . explicit analysis." Landers, 444 N.J. Super. at 324.

The statute requires the court to consider other factors, which include:

(a) The age and health of the parties at the time of the application;

(b) The obligor's field of employment and the generally accepted age of retirement for those in that field;

(c) The age when the obligor becomes eligible for retirement at the obligor's place of employment, including mandatory retirement dates or the dates upon which continued employment would no longer increase retirement benefits;

(d) The obligor's motives in retiring, including any pressures to retire applied by the obligor's employer or incentive plans offered by the obligor's employer;

(e) The reasonable expectations of the parties regarding retirement during the marriage or civil union and at the time of the divorce or dissolution;

10

(f) The ability of the obligor to maintain support payments following retirement, including whether the obligor will continue to be employed part-time or work reduced hours;

(g) The obligee's level of financial independence and the financial impact of the obligor's retirement upon the obligee; and

(h) Any other relevant factors affecting the parties' respective financial positions.

[N.J.S.A. 2A:34-23(j)(3)(a) to (h).]

Defendant argues the Family Part judge improperly weighed these statutory factors by giving "overriding" weight to the wealth he accumulated after the divorce without considering that his income was substantially reduced. He argues the court failed to consider relevant factors. He objected to the court's suggestion that he sell or lease his real estate holdings to generate income to pay alimony.

We do not agree that the court improperly weighed the statutory factors. The trial court's ruling considered each of the factors under N.J.S.A. 2A:34-23(j)(3). The court found that defendant's income, based on his social security and IRA mandatory distributions, was $46,000 per year, but that in addition, defendant had "considerable dividends, interests, and capital gains in income," which resulted "in his . . . assets . . . [being] over 4.3 million dollars." He had

11

properties he could rent or sell. The court considered his age, health, and inability to work in making its findings.

The court found that plaintiff was "in a difficult financial position," that she had "mortgaged most of the equity in the house, ha[d] considerable credit card and personal debts, ha[d] borrowed against her pension . . . owe[d] both State and Federal Income Tax . . . [was] well behind in her mortgage and probably facing foreclosure." The court considered defendant's arguments that plaintiff "dissipated all of her assets," accumulated debt "due to waste and mismanaging," and "squandered" her inheritance. The court found, however, that a great deal of plaintiff's money was spent supporting her daughter and grandson. There was no inappropriate weight given to any one factor. The court's decision took all of the evidence into consideration.

Although defendant contends the trial court should have found that plaintiff had the ability to save for retirement, we find no abuse of discretion by the court in its conclusion about this factor. There was ample evidence that "a great deal of the monies that were spent were trying to help her daughter and support her grandson." These expenses were not expected at the time when the parties divorced.

12

We are satisfied the court did not abuse its discretion in balancing the relevant factors. The court's decision was based upon a thorough analysis of the statutory factors set forth in N.J.S.A. 2A:34-23(j)(3), with proper consideration given to the entire record.

Other arguments raised by defendant lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION