NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1264-23

DIANE VOYNICK,

     Plaintiff-Respondent,

v.

BRIAN VOYNICK,

     Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **March 5, 2025**
>
> **APPELLATE DIVISION**

Argued October 8, 2024 – Decided March 5, 2025

Before Judges Sumners,[1] Susswein and Bergman.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-1395-99.

Angelo Sarno argued the cause for appellant (Sarno Da Costa, D'Aniello Maceri LLC, attorneys; Angelo Sarno, of counsel and on the briefs; Laura Guinta Gencarelli, on the briefs).

Jan L. Bernstein argued the cause for respondent (Phillips Nizer, LLP, attorneys; Jan L. Bernstein, on the brief).

---

[1]  Judge Sumners did not participate in oral argument but joins the decision with counsel's consent.  R. 2:13-2(b).

The opinion of the court was delivered by

BERGMAN, J.S.C. (temporarily assigned).

In this appeal, we address the legal standards to be applied by a reviewing court concerning applications for termination or modification of permanent alimony under N.J.S.A. 2A:34-23(j)(3) based on the retirement of an obligor when the judgment or order establishing the alimony obligation was entered prior to the 2014 amendment of N.J.S.A. 2A:34-23.

Based on the language in subsection (j)(3), after an obligor has shown they have reached a "good faith retirement age," a prima facie showing of changed circumstances may be established by an obligor satisfying the standards set out in the Court's seminal holding of Lepis v. Lepis, 83 N.J. 139 (1980). A typical method of showing a prima facie changed circumstance is through proof of a decrease in an obligor's financial circumstances due to their retirement affecting their continuing ability to pay alimony at the level set forth in the current judgment or order. Here, we hold under subsection (j)(3), that a prima facie change of circumstance can also be shown by an obligee's financial disclosure or other evidence in the record exhibiting: (1) an obligee has adequately saved for retirement and no longer has a continuing need for alimony as set forth in the order or judgment to maintain the standard of living enjoyed during the marriage; or (2) an obligee had the ability to adequately

2

save for retirement after the final judgment of divorce and, if they had done so, would no longer have a continuing need for alimony as set forth in the order or judgment to maintain the standard of living enjoyed during the marriage.

Discovery and a hearing are necessary if genuine issues of material fact exist related to an obligee's ability to have adequately saved for retirement affecting their continuing need for alimony. At a hearing, under subsection (j)(3), the obligor has the burden to prove by a preponderance of evidence that a modification or termination of alimony is warranted based on the factors set forth in N.J.S.A. 2A:34-23(j)(3)(a to -h).

Defendant challenges the trial court's determination that he failed to show a prima facie change of circumstances under N.J.S.A. 2A:34-23(j)(3) entitling him to a termination or downward modification of his permanent alimony obligation or, in the alternative, to discovery and a hearing. Because we conclude defendant satisfied his burden in showing a prima facie change of circumstances concerning plaintiff's ability to have saved adequately for retirement which may affect her continuing need for alimony or the level of alimony she was awarded in the Final Judgment of Divorce (FJD), and genuine issues of material fact existed in the record, we reverse and remand the matter for the parties to engage in discovery and for a plenary hearing to be held

3

addressing these issues.  We affirm the remainder of defendant's challenges on appeal based on the cogent reasons set forth in the trial court's oral decision.

## I.

The parties were married in 1979.  Three children were born of the marriage, all of whom were emancipated at the time of defendant's motion. The FJD was entered as a dual judgment of divorce in September 2003.  The FJD incorporated the parties' property settlement agreement (PSA). Throughout the parties' marriage, defendant was the owner of a veterinary practice.  Plaintiff was primarily responsible for the home and the children, but also worked as a bookkeeper at the hospital after defendant established it several years into the marriage.  After the divorce, plaintiff ceased working at the veterinary practice.  At the time of their divorce, plaintiff was forty-eight years old, defendant was forty-seven years old, and the parties' youngest child was ten years old.

Regarding alimony, the PSA provides in relevant part:

> Paragraph 3: The husband agrees to pay to the wife permanent alimony of $120,000 per year, commencing September 15, 2003, at the rate of $10,000 per month.
>
> Paragraph 4: The alimony payments referred to above shall be taxable to the wife and deductible to the husband on their future independently filed federal and state income tax returns.  The husband's obligation to pay alimony shall continue until the first happening of any of the following events:

Death of either the husband or wife; or
Remarriage of the wife.

Paragraph 5: The parties specifically recognize that this agreement does not include an anti-Lepis clause.

. . . .

Paragraph 26: Husband shall maintain $1,000,000 of life insurance on his life naming the wife as the irrevocable beneficiary of $750,000.

The PSA also provided defendant's alimony obligation was based on his annual gross income of approximately $400,000 at that time. For approximately twenty years following the entry of the FJD, defendant continued to operate his veterinary practice. Defendant sold his practice in September 2020 but continued to work part-time with compensation based on commission. He fully retired in May 2021 after working as a veterinarian for more than forty years. Defendant asserts he took his health and other factors into consideration when retiring. It is not disputed that defendant became eligible for full social security retirement benefits when he turned 66.4 years old in April 2023.

After the divorce, plaintiff moved to North Carolina. She has not held outside employment since she ceased working at the veterinary practice more than twenty years prior to the filing of defendant's motion. Plaintiff was diagnosed with medical conditions in 2007, and after completing treatment has

had no reoccurrence of those conditions. Plaintiff also had other physical ailments since the divorce, which she claims have impacted her employability.

After retiring, defendant continued to pay alimony to plaintiff as set forth in the PSA until he reached full social security retirement age at 66.4 years old. In July 2023, defendant filed a motion seeking to:

1. Terminat[e his] alimony obligation pursuant to the dual judgment of divorce dated September 10, 2003, and the marital settlement agreement [of the same date];

2. Terminat[e] [his] obligation to maintain life insurance pursuant to paragraph 26 of the marital settlement agreement dated September 10, 2003 based upon a substantial change in circumstances; [and]

3. Requir[e] plaintiff to pay counsel fees and costs on behalf of defendant[].

Defendant's motion was supported by a certification with exhibits including copies of the FJD, PSA, and a current case information statement (CIS) with copies of 2022 joint state and federal tax returns filed with his wife. Defendant's motion did not include an alternative request for downward modification of his alimony obligation.

Plaintiff opposed defendant's motion and filed a cross-motion requesting enforcement of the parties' PSA and FJD, to increase alimony by $6,000 per

A-1264-23

month, and for counsel fees. Defendant's current CIS showed his assets were valued at approximately $8 million.

In his motion, defendant argued that substantial change of circumstances had occurred due to his retirement. His certification stated:

> More specifically, I am 66 ½ years of age and I retired as a veterinarian in May 2022. I understand that I could have made an application to the [c]ourt to terminate my alimony obligation sooner based upon the fact that I was retired, however, I waited until I was 66 ½ years of age to make this application to the [c]ourt. My attorney has advised me that once I turn that age, which is social security eligible, and the fact that I have in fact retired, I have no earned income, that my application to the [c]ourt should have no major objection and that my application to terminate alimony should be granted.

In opposition, plaintiff asserted: (1) she lives a "relatively humble lifestyle"; (2) has incurred "significant medical expenses" due to various health issues; and (3) it was not possible for her to make up the loss of alimony by taking significant withdrawals from her retirement assets, because her retirement funds will be depleted far too prematurely. She requested the court deny defendant's motion.

Plaintiff's CIS filed with her opposition disclosed she had a current net worth of $2.75 million. Her assets primarily consisted of the equity in her home which she valued at $1.46 million and her retirement accounts which she valued at $1.6 million. Plaintiff asserted her debts consisted of a first

<span>A-1264-23</span>

mortgage of approximately $104,000 held by a partnership with which she is affiliated—Kipka Prop LLC Partnership—and approximately $219,000 on a home equity line of credit from Wells Fargo.

In his reply, defendant asserted plaintiff: (1) has been in relatively good health for several years after her medical issues were addressed; (2) was able to accumulate over $1.5 million in retirement assets; (3) funded the construction of a $2 million lake front home in North Carolina which was placed in a trust; (4) failed to disclose in her CIS the existence of a "family trust in the name of her wealthy father who had passed" for which she was the beneficiary or whether she received benefits from the trust; (5) failed to list or deny the existence of an "inheritance [she] received from [defendant's] brother" allegedly in the approximate amount of $200,000; (6) received approximately $1,200,000 in assets in equitable distribution; (7) received in excess of $2,760,000 in alimony since the divorce; (8) failed to respond to defendant's assertion that she has not taken any distributions from her retirement account despite being sixty-nine years of age and (9) was capable of earning income over the twenty plus years since the divorce which could have added to the funding of her retirement.

During oral argument, the trial court addressed whether defendant had met his burden to show a prima facie change in circumstances entitling him to

A-1264-23

a termination of his permanent alimony obligation or to discovery and a hearing. The court addressed whether defendant satisfied the initial burden to show he "cannot continue to pay alimony." The court found defendant's inability to show he cannot continue to pay alimony due to his retirement is where his prima facie showing failed. The trial court found:

> [B]ut we talk about that initial burden, is there a prima facie showing that he cannot afford to continue to pay the alimony because that's what the statute says. If you retire, that's, you know, that is evidence of a change of circumstance. But then there's a second prong to it which says that [t]he burden continues to be on that person to show that they cannot continue to pay the alimony because of the retirement. That is . . . where his prima facie showing . . . has failed. Because if I just look at the cold numbers, you know, the cold numbers indicate that he can certainly pay for some period of time moving forward. That may change over time, you know. But right now, with a person with $8 million of assets in the bank, you know, how could somebody say that that is going to not be something which the court is going to consider.

In addition, the trial court focused on the plain language of the PSA, explaining:

> And how do we get around, you know, <u>Konzelman</u>[2] saying that if parties agree to certain things in their

---

[2] <u>Konzelman v. Konzelman</u>, 158 N.J. 195 (1999) (holding when parties have voluntarily agreed to the circumstances which will terminate an alimony obligation, a court should enforce the agreement when those circumstances have occurred, even if it does not result in any changed financial circumstances).

property settlement agreement that they're bound by that, regardless of what the law is? I mean what's the point of having an agreement that the only termination of alimony is going to be death, remarriage . . . but not retirement.

Ultimately, the trial court found:

I'm confronted with a very difficult situation. I certainly understand that nobody wants to pay alimony after they retire. But I also understand that, you know, when you have a long-term marriage and somebody promises to pay alimony permanent[ly] it really almost — it[s] kind of insulting to say, well, you know what, permanent doesn't really mean permanent, you know. Open duration doesn't mean open for the rest of our lives. It means, you know, something else. You know, because I don't think that's the impression that the recipient has when they sign on the dotted line. And, quite frankly, I'm not sure if the person paying the alimony really feels that, you know, that they are going to get out of that. I don't know why in the agreement it didn't just say, look, alimony's going to be revisited upon retirement. You know, I mean you — we see it all the time and I would have no— then I think there would be a much stronger argument, you know, that . . . it was agreed that it was going to be revisited upon retirement, and not terminated, revisited.

The trial court determined defendant's retirement—standing alone—was not a prima facie change in circumstances entitling him to a review of his alimony obligation without a showing by defendant that he could not afford to continue to pay his alimony obligation. Further, the court noted defendant's motion requested only a termination of alimony, not a downward modification,

which would have "been a different argument." On that basis, the court rejected defendant's argument he was entitled to discovery and a hearing and entered an order denying defendant's motion to terminate alimony and his obligation to provide life insurance without prejudice.

Thereafter, the court granted plaintiff's request to enforce paragraph three of the PSA concerning alimony and paragraph twenty-six concerning his obligation to carry life insurance. The court denied plaintiff's request to increase defendant's alimony obligation without prejudice. The court denied both parties' requests for counsel fees.

On appeal, defendant asserts the trial court erred by: (1) misinterpreting the PSA concerning the events that should be considered changed circumstances for purposes of alimony termination or modification; (2) failing to find defendant's good faith retirement was a prima facie showing of a changed circumstance warranting a review of his permanent alimony obligation; and (3) improperly applying the factors of N.J.S.A. 2A:34-23(j)(3), specifically, the requirement concerning plaintiff's "ability . . . to have saved adequately for retirement."

II.

Our review of a Family Part judge's findings is limited. We "afford substantial deference to the Family Part's findings of fact because of that

11

court's special expertise in family matters." W.M. v. D.G., 467 N.J. Super. 216, 229 (App. Div. 2021) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "Under that deferential standard of review, we are bound to uphold a finding that is supported by sufficient credible evidence in the record." Moynihan v. Lynch, 250 N.J. 60, 90 (2022). "We will reverse only if we find the [court] clearly abused [its] discretion." Clark v. Clark, 429 N.J. Super. 61, 72 (App. Div. 2012).

We apply that deference to a Family Part judge's decision regarding a motion to amend a marital-support obligation. Cardali v. Cardali, 255 N.J. 85, 107 (2023); see also Larbig v. Larbig, 384 N.J. Super. 17, 21 (App. Div. 2006) ("Whether [a support] obligation should be modified . . . rests within a Family Part judge's sound discretion"). Thus, a Family Part judge's decision regarding a support obligation should not be disturbed unless "the court made findings inconsistent with the evidence or unsupported by the record or erred as a matter of law." Reese v. Weis, 430 N.J. Super. 552, 572 (App. Div. 2013). We review questions of law de novo. Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020).

III.

A.

Initially, we address defendant's argument the court erred by finding his retirement was not a prima facie showing of changed circumstances. The court found retirement was not explicitly listed as a triggering event in the PSA which permitted the termination or modification of defendant's alimony obligation. We note the record is unclear whether the court fully addressed this issue. We glean from the court's findings that it determined the explicit terms in the PSA foreclosed consideration of defendant's retirement from being considered a changed circumstance for alimony termination or modification purposes. We also observe the court made findings after assuming defendant's retirement was a prima facie change of circumstances in the PSA for alimony termination purposes.

General contract principles govern interpretation of property settlement agreements. Dworkin v. Dworkin, 217 N.J. Super. 518, 524 (App. Div. 1987). The goal in contract interpretation is to ascertain the probable intent of the parties. Sinopoli v. North River Ins. Co., 244 N.J. Super. 245, 250 (App. Div. 1990). The court should inspect all language within the four corners of the contract and consider the surrounding circumstances and conduct of the parties

when ascertaining the probable intent of the parties.  Regan v. Regan, 246 N.J. Super. 473, 478 (Ch. Div. 1990).

Based upon our review of the record, we determine no ambiguity exists in the PSA concerning the triggering events permitting the termination of defendant's permanent alimony obligation.  Although paragraph four states the husband's obligation to pay alimony shall continue until the "first happening of the death of either the husband or wife; or the remarriage of the wife," paragraph five states the parties specifically recognize that "this agreement does not include an anti-Lepis[3] clause."  An anti-Lepis clause [contractually] limits the factual situations qualifying as a change in circumstances sufficient to modify an alimony obligation.  See Quinn v. Quinn, 225 N.J. 34, 49-50 (2016) (citing Konzelman, 158 N.J. at 193).

We conclude there would be no purpose for paragraph five, placed immediately after the terms concerning permanent alimony at paragraph four, if the parties intended alimony could never be modified or terminated except for the two reasons set forth in paragraph four.  The PSA specifically states it does not include an anti-Lepis clause which we determine clearly connotates

---

[3] In Lepis, 83 N.J. at 157, the Supreme Court set forth "the proper procedure for courts to follow on modification motions."  "A prima facie showing of changed circumstances must be made before a court will order discovery."  Id. at 157-58.

the defendant's alimony obligation is subject to modification based on changed circumstance as defined under Lepis. Therefore, to the extent the court found the terms of the PSA did not permit the defendant to terminate or modify his alimony obligation except for the two reasons listed in paragraph four, we conclude this finding was a misapplication of its discretion and reverse this determination.

## B.

We now address the trial court's denial of defendant's motion because his moving papers requested only termination of his alimony obligation, not a downward modification. Since we conclude the same legal principles of changed circumstances set forth in Lepis apply to both a termination and modification of an alimony obligation, the court's ruling barring defendant from alternatively requesting a decrease was also a misapplication of the court's discretion. Defendant's modification request is supported by the plain language of the PSA and permitting him to alternatively request a downward modification of alimony did not prejudice plaintiff because defendant's burden to show a prima facie changed circumstance is the same for both termination and modification of alimony.

A-1264-23

C.

We now turn to defendant's contention that the trial court erred by finding his retirement after reaching a "good faith retirement age" was not a prima facie changed circumstance entitling him to a termination or modification of his alimony obligation nor sufficient to require discovery and a hearing.  Defendant asserts proof of him reaching good faith retirement age and his assertion that he has no "earned income" was a sufficient showing of a prima facie changed circumstance or, at a minimum, created genuine issues of material fact requiring discovery and a hearing.  Because we conclude the court correctly determined that defendant's failure to show a decrease in his financial circumstances after reaching good faith retirement age was not a prima facie change of circumstance under N.J.S.A. 2A:34-23(j)(3), we concur with the court's determination.

"The award of '[a]limony in New Jersey is primarily governed by statute.'"  Landers v. Landers, 444 N.J. Super. 315, 320 (App. Div. 2016) (quoting Gayet v. Gayet, 92 N.J. 149, 150 (1983)).  In 2014, our Legislature made substantial changes to the alimony statute set forth at N.J.S.A. 2A:34-23. The Legislature's changes to N.J.S.A. 2A:34-23 were observed to have

> effectively end[ed] permanent alimony and limit the
> length of payments for couples married fewer than 20
> years.  It also ma[d]e it easier to reduce or end
> payments if spouses lose their jobs or retire.  The

measure was the product of negotiations between advocates seeking sweeping changes and women's groups and law associations.

. . . .

[C]urrent payers will be eligible for some of the new provisions, including the presumption that alimony ends at age 67.

[Sophia Hollender, <u>City News: N.J. Gets New Rules On Alimony</u>, <u>Wall Street Journal</u>, September 11, 2014, at A18.]

Specifically, in the statutory amendments, the Legislature replaced "permanent alimony" with "open durational alimony." <u>See</u> N.J.S.A. 2A:34-23(b). Additionally, the Legislature added the following language to the statute related to alimony:

In any case in which there is a request for an award of alimony, the court shall consider and make specific findings on the evidence about all of the statutory factors set forth in subsection b. of this section.

For any marriage or civil union less than 20 years in duration, the total duration of alimony shall not, except in exceptional circumstances, exceed the length of the marriage or civil union. Determination of the length and amount of alimony shall be made by the court pursuant to consideration of all of the statutory factors set forth in subsection b. of this section. In addition to those factors, the court shall also consider the practical impact of the parties' need for separate residences and the attendant increase in living expenses on the ability of both parties to maintain a standard of living reasonably comparable to the standard of living established in the marriage or civil

17

union, to which both parties are entitled, with neither party having a greater entitlement thereto.

Exceptional circumstances which may require an adjustment to the duration of alimony include:

(1) The ages of the parties at the time of the marriage or civil union and at the time of the alimony award;

(2) The degree and duration of the dependency of one party on the other party during the marriage or civil union;

(3) Whether a spouse or partner has a chronic illness or unusual health circumstance;

(4) Whether a spouse or partner has given up a career or a career opportunity or otherwise supported the career of the other spouse or partner;

(5) Whether a spouse or partner has received a disproportionate share of equitable distribution;

(6) The impact of the marriage or civil union on either party's ability to become self-supporting, including but not limited to either party's responsibility as primary caretaker of a child;

(7) Tax considerations of either party;

(8) Any other factors or circumstances that the court deems equitable, relevant and material.

[N.J.S.A. 2A:34-23(c).]

A further amendment to the statute specifically addressed the effect of an obligor's retirement on their alimony obligation stating "[a]limony may be modified or terminated upon the prospective or actual retirement of the

obligor." N.J.S.A. 2A:34-23(j). Relevant to this appeal, the Legislature further added subsection (j)(3) which states:

> When a retirement application is filed in cases in which there is an existing final alimony order or enforceable written agreement established prior to the effective date of this act, the obligor's reaching full retirement age as defined in this section shall be deemed a good faith retirement age. Upon application by the obligor to modify or terminate alimony, both the obligor's application to the court for modification or termination of alimony and the obligee's response to the application shall be accompanied by current Case Information Statement or other relevant documents as required by the Rules of Court, as well as the Case Information Statements or other documents from the date of entry of the original alimony award and from the date of any subsequent modification. In making its determination, the court shall consider the ability of the obligee to have saved adequately for retirement as well as the following factors in order to determine whether the obligor, by a preponderance of the evidence, has demonstrated that modification or termination of alimony is appropriate:
>
>> (a) The age and health of the parties at the time of the application;
>> (b) The obligor's field of employment and the generally accepted age of retirement for those in that field;
>> (c) The age when the obligor becomes eligible for retirement at the obligor's place of employment, including mandatory retirement dates or the dates upon which continued employment would no longer increase retirement benefits;
>> (d) The obligor's motives in retiring, including any pressures to retire applied

19

by the obligor's employer or incentive plans offered by the obligor's employer;

(e) The reasonable expectations of the parties regarding retirement during the marriage or civil union and at the time of the divorce or dissolution;

(f) The ability of the obligor to maintain support payments following retirement, including whether the obligor will continue to be employed part-time or work reduced hours;

(g) The obligee's level of financial independence and the financial impact of the obligor's retirement upon the obligee; and

(h) Any other relevant factors affecting the parties' respective financial positions.

[N.J.S.A. 2A:34-23(j)(3).]

Subsection (j)(3) substantially followed the procedural framework of the Supreme Court's seminal opinion of Lepis. See Landers, 444 N.J. Super. at 323 (determining that subsection (j)(3) "follows the prior principles outlined in Lepis and its progeny").

Prior to the amendment of the statute, one way a party could seek modification of alimony was by "demonstrating that changed circumstances have substantially impaired the ability to support himself or herself." Amzler, 463 N.J. Super. at 197-98 (quoting Landers, 444 N.J. Super. at 320). In addition, "[a]n income reduction resulting from a 'good faith retirement' after age sixty-five [was] a well-recognized change of circumstances event,

prompting a detailed review of the financial situation facing the parties to evaluate the impact retirement has on a preexisting alimony award." Landers, 444 N.J. Super. at 320.

Based on these legal principles, we determine an obligor moving to terminate or modify an alimony obligation under subsection (j)(3) is first required to prove they have reached full retirement age based on the definition provided in the Social Security Act. See N.J.S.A. 2A:34-23. "Full retirement age" was defined as "the age at which a person is eligible to receive full retirement benefits under section [2]16 of the federal Social Security Act (42 U.S.C.[A.] § 416)." Ibid. As part of their application, the obligor is next required to file a current CIS or other relevant documents, as well as the CIS from the date of entry of the original alimony award or from the date of any subsequent order which modified the award. The same financial documents are required to be filed by the obligee. See N.J.S.A. 2A:34-23(j)(3). After a court's review of an obligor's proofs supporting their motion and an obligee's response, it must determine whether an obligor has made a prima facie showing of changed circumstances entitling the obligor to termination or modification of their alimony obligation or, in the alternative, to discovery and a hearing.

A-1264-23

In this matter, it is not disputed that defendant reached "full retirement age" and the filing of his motion when he was approximately sixty-seven years old was considered "a good faith retirement age" under subsection (j)(3). Defendant asserts because he has proven he has reached a good faith retirement age and he no longer has an "earned income" that he is entitled to a termination of his alimony obligation or, in the alternative, a review of his alimony obligation for a reduction is required. We disagree.

A comparison of the language in subsections (j)(1) and (j)(3) of N.J.S.A. 2A:34-23 aids our analysis. N.J.S.A. 2A:34-23(j)(1) states in pertinent part:

> (1) There shall be a rebuttable presumption that alimony shall terminate upon the obligor spouse or partner attaining full retirement age, except that any arrearages that have accrued prior to the termination date shall not be vacated or annulled. The court may set a different alimony termination date for good cause shown based on specific written findings of fact and conclusions of law.

> The rebuttable presumption may be overcome if, upon consideration of the following factors and for good cause shown, the court determines that alimony should continue.

When comparing N.J.S.A. 2A:34-23 subsection (j)(1) to subsection (j)(3), we note under subsection (j)(3) there is no rebuttable presumption that alimony should terminate based on reaching full retirement age, unlike

subsection (j)(1).  In contrast, subsection (j)(3) deems reaching full retirement age to be a "good faith retirement age."  (Emphasis added).

We conclude based on the language set forth in subsection (j)(3) that an obligor reaching full social security retirement age would be deemed to have retired at "a good faith retirement age."  We further conclude by adding subsection (j)(3) in the 2014 amendment to N.J.S.A. 2A:34-23, the Legislature modified the common law standard under Lepis which previously required an obligor to prove their retirement was made in good faith as the first step in showing a prima facie changed circumstance in order to modify an alimony obligation.

Prior to the 2014 amendment to N.J.S.A. 2A:34-23 which added subsection (j) related to an obligor's retirement, we had concluded:

> the voluntariness of the change in circumstances, in itself, is viewed as barring an application for modification.  In other words, if a party, not otherwise under compulsion, voluntarily chooses a change in lifestyle which reduces his or her financial circumstances, he or she may not base an application for modification of an alimony award on that voluntary change.
>
> [Deegan v. Deegan, 254 N.J. Super. 350, 356 (App. Div. 1992).]

"[V]oluntary retirement cases are evaluated solely based upon the motives of the party seeking to make the change.  If the change is made in

good faith, the application for modification is approved." Ibid.  An obligor seeking to reduce a support obligation because of an income decrease due to a voluntary early retirement must show that the "advantage to the retiring spouse substantially outweighs the disadvantage to the payee spouse." Id. at 358.

We also applied the Deegan "voluntary" analysis to circumstances where the supporting spouse voluntarily changed their career and thus reduced their income before retirement, Storey v. Storey, 373 N.J. Super. 464, 468-69 (App. Div. 2004); and to a dependent spouse who suffered a disadvantage because the supporting spouse voluntarily continued working beyond normal retirement age and thus delayed the dependent spouse's ability to collect from a pension under equitable distribution terms in the divorce judgment, Moore v. Moore, 376 N.J. Super. 246, 247 (App. Div. 2005).

These cases stand for the proposition that courts were required to engage in an evaluation of whether an obligor's retirement and subsequent decrease in their financial circumstances was "voluntary."  Under the cases cited above, a retirement not made in good faith was deemed a voluntary financial reduction and was not considered to be a change of circumstance permitting a review of a payor's alimony obligation.

We conclude, by enacting subsection (j)(3), the Legislature eliminated an obligor's affirmative burden under Deegan to show that their retirement was

24

made in good faith and was not "voluntary" by the obligor reaching a "good faith retirement age " under the definition set forth in the Social Security Act. See N.J.S.A. 2A:34-23(j)(3).

"[T]he Legislature is presumed to be aware of judicial construction of its enactments." DiProspero v. Penn, 183 N.J. 477, 494 (2005) (quoting N.J. Democratic Party, Inc. v. Samson, 175 N.J. 178, 195 n.6 (2002)). Thus, "a change of language in a statute ordinarily implies a purposeful alteration in [the] substance of the law." Ibid. (alteration in original) (quoting Nagy v. Ford Motor Co., 6 N.J. 341, 348 (1951)). Furthermore, "[t]he Legislature is presumed to be familiar with its own enactments, with judicial declarations relating to them, and to have passed or preserved cognate laws with the intention that they be construed to serve a useful and consistent purpose." State v. Federanko, 26 N.J. 119, 129 (1958) (emphasis added) (citing Appeal of N.Y. State Realty & Terminal Co., 21 N.J. 90 (1956)).

As we stated previously, it is undisputed that defendant had reached full retirement age at the time he filed his motion to terminate his permanent alimony obligation. Therefore, we conclude his retirement was a good faith retirement under N.J.S.A. 2A:34-23(j)(3).

Under this analytical framework, after the obligor has shown a good faith retirement, the next step is for a reviewing court to determine if a prima

facie change in circumstances has been shown based on an obligor's overall financial status related to their continuing ability to pay the alimony obligation, including their non-immune assets, income and reasonable income stream, if any, from non-exempt assets. See N.J.S.A. 2A:34-23(j)(4) (directing assets distributed between the parties at the time of the entry of a final order of divorce shall not be considered by the court for purposes of determining the obligor's ability to pay alimony following retirement). During this step a reviewing court should also evaluate whether an obligor has shown a prima facie change of circumstances and whether their retirement substantially impaired their financial ability to support themselves under the same standard of living enjoyed during the marriage. See N.J.S.A. 2A:34-23(b)(4) (stating when determining an alimony award the court shall consider [t]he standard of living established in the marriage . . . and the likelihood that each party can maintain a reasonably comparable standard of living, with neither party having a greater entitlement to that standard of living than the other).

When applying the foregoing principles, we conclude the court did not abuse its discretion by finding defendant met his burden under subsection (j)(3) to show he has reached a good faith retirement age, but failed to make a prima facie showing that his income and assets were insufficient to continue paying his permanent alimony obligation or that his retirement impaired his

A-1264-23

ability to support himself based on the standard of living he had during the marriage.

Our review of the record demonstrates, as the court found, that defendant failed to provide sufficient information in his CIS, certification and other submissions which enabled the court to undertake an appropriate analysis of his income and assets to determine whether there was a prima facie showing of a changed circumstance. Defendant provided no evidence, expert or otherwise, delineating his immune and non-immune assets or the income stream from those non-immune assets. This evidence is necessary to determine whether he has an ability to pay the currently ordered level of alimony when compared to his financial circumstances at the time he entered into the PSA. Because defendant failed to adequately categorize the assets in his CIS and failed to engage in any financial analysis including an income stream analysis of his non-immune assets, the court's finding—which found the approximate $8 million in assets held by defendant and the potential income stream which could be generated from these assets demonstrated defendant had the ability to continue paying alimony to plaintiff—was clearly supported by credible evidence in the record. We conclude there was no error in this finding.

27

D.

We now address defendant's contention the court misapplied the specific provision in N.J.S.A. 2A:34-23(j)(3) related to the "ability of the [plaintiff] to have saved adequately for retirement." In its oral decision, the court found:

> [defendant]'s argument that [plaintiff] should have saved all these years, she's had a bunch of medical issues, you know, and . . . well, you're not living in Morris County anymore, but, you know, [does] $120,000 a year really have enough fat on it that you're going to be able to save the same as a person who's earning over a million dollars here. Probably not.

We have previously held that subsection (j)(3) "elevates the ability of the obligee to have saved adequately for retirement, listed only as a factor under N.J.S.A. 2A:34-23(j)(1), setting it apart from other considerations and requiring its explicit analysis." Landers, 444 N.J. Super. at 324 (citing N.J.S.A. 2A:34-23(j)(3)).

This language first appears in the statute at subsection (j)(1)(j) as a factor to consider concerning the termination or modification of alimony when an order or agreement was entered after the statute's amendment in 2014. As stated previously, an obligor reaching full retirement age under subsection (j)(1) is entitled to a rebuttable presumption that alimony should be terminated. Subsection (j)(1)(j) stated "[t]he ability of the recipient to have saved

28

adequately for retirement" was one of several factors which can be utilized to rebut this presumption.  <u>See</u> N.J.S.A. 2A:34-23(j)(1)(a-k).

Subsection (j)(3) differs from subsection (j)(1) by explicitly setting forth the ability of the obligee "to have saved adequately for retirement" in the main portion of this subsection, separately from the other factors.  We deem this formulation requires a reviewing court to specifically consider the ability of an obligee to have saved adequately for retirement in its analysis related to an obligor's motion to terminate or modify alimony under subsection (j)(3).  <u>See</u> <u>Landers</u>, 444 N.J. Super. at 324.  This subsection of the statute explicitly mandates the court to undertake this analysis as part of its determination whether an obligor has met their burden to show a prima facie change of circumstances to trigger a review of their alimony obligation.

We determine under subsection (j)(3) that an obligee is required to produce competent evidence to support their position that they were unable to adequately save for retirement and they have a continuing need for alimony in order to maintain a comparative standard of living enjoyed during the marriage.  This requirement is the first consideration listed in subsection (j)(3) after the obligation for the parties to file a disclosure of their financial information.

A-1264-23

By subsection (j)(3) requiring an obligee to affirmatively provide financial information, we determine the Legislature intended a reviewing court to independently consider an obligee's ability to have adequately saved for retirement. We further determine this information is required for a reviewing court to determine an obligee's continuing need for alimony at the time of an obligor's retirement. These determinations are crucial in deciding whether a prima facie changed circumstance has been shown. We find support for this proposition related to an obligee's continuing need for alimony at subsection (j)(3)(g) which requires consideration of an "obligee's level of financial independence and the financial impact of the obligor's retirement upon the obligee." N.J.S.A. 2A:34-23(j)(3)(g).

Based on the language of N.J.S.A. 2A:34-23(j)(3), we conclude the Legislature intended that a prima facie changed circumstance can not only be shown through a change in an obligor's financial circumstances after retirement affecting their continuing ability to pay alimony, but also may be exhibited through an obligee's financial disclosure or other evidence demonstrating a continuing need for alimony, or lack thereof. If the motion record demonstrates there is prima facie evidence demonstrating an obligee has adequately saved for retirement or had the ability to adequately save for retirement, discovery and a hearing is necessary to determine whether

30                                          A-1264-23

termination or reduction of alimony is warranted. A hearing is required where there is a dispute in material fact. Murphy v. Murphy, 313 N.J. Super. 575, 580 (App. Div. 1998); Lepis, 83 N.J. at 159. A material factual dispute "bear[s] directly on the legal conclusions required to be made and [such] disputes can only be resolved through a plenary hearing." Spangenberg v. Kolakowski, 442 N.J. Super. 529, 540 (App. Div. 2015).

After our review of the record, we conclude plaintiff did not provide a sufficient financial disclosure or evidence exhibiting that her current financial circumstances demonstrated a continuing need for alimony in the current annual amount of $120,000. We also determine plaintiff failed to provide specific reasons nor any analysis showing her inability to have adequately saved for retirement since the entry of the FJD over twenty years ago. In addition, we conclude defendant effectively challenged plaintiff's assertions related to her continuing need for alimony and her ability to have adequately saved for retirement which created genuine factual issues in the record.

Plaintiff's CIS admitted she had a net worth of $2.75 million consisting of a home she valued at $1.46 million and retirement accounts valued at $1.6 million. She listed debts which are a small fraction of her net worth. Defendant's certification and reply certification claimed: (1) plaintiff has been in relatively good health for several years after her medical issues were

31

addressed; (2) her accumulation of substantial non-immune assets; (3) her funding the construction of a home in North Carolina which defendant claims has a present value of $2 million allegedly placed in a trust; (4) the existence of a "family trust in the name of her wealthy father who had passed" for which she receives benefits; (5) an inheritance from [defendant's] brother of $200,000; (6) plaintiff's receipt of support under the FJD in the amount of $2,760,000 since it was entered; and (7) defendant's assertion that plaintiff had the ability to earn income during the twenty plus years since the divorce which could have added to the funding of her retirement needs.

We conclude these factual disputes are material to plaintiff's ability to have adequately saved for retirement and her need for alimony. Material factual issues also exist as to whether plaintiff's current income, ability to earn income after the divorce, her assets and potential income stream from non-immune assets enable her to fully or partially support herself in the same standard of living she enjoyed during the marriage.

IV.

In sum, we conclude the trial court misapplied its discretion in determining plaintiff's opposition satisfied her obligation to prove her current financial circumstances exhibit a continuing need for alimony or that she was unable to adequately save for retirement requiring a continuation of alimony at

A-1264-23

the level of $120,000 per year as set forth in the FJD. Therefore, we are constrained to vacate the order denying defendant's motion on these bases and remand to the trial court to set a discovery schedule and conduct a plenary hearing to determine whether defendant is entitled to a termination or downward modification of his alimony obligation. We further conclude, for purposes of discovery and for consideration at the hearing, that defendant's financial circumstances are also relevant to the factors set forth in N.J.S.A. 2A:34-23(j)(3). We therefore direct the trial court to enter an order permitting the parties to conduct discovery concerning the other's financial circumstances, including their respective assets, income, potential income stream from non-exempt assets and their income earned or their ability to have earned income after the divorce judgment was entered to the present time. This list is not to be considered exhaustive, and we leave the scope of discovery to the court's discretion, including whether a case management conference is necessary to address any specific discovery issues or requests by the parties which may be relevant at the hearing.

At the hearing, the burden remains on the defendant to prove by a preponderance of the evidence that a modification or termination of alimony is warranted under the requirements and factors set forth in N.J.S.A. 2A:34-23(j)(3) that: (1) plaintiff has adequately saved for retirement and no longer

has a continuing need for alimony at its current level in order to maintain the standard of living enjoyed during the marriage, or (2) plaintiff had the ability to adequately save for retirement, and if she had done so, would no longer have a continuing need for alimony, or the currently ordered amount of alimony set forth in the FJD in order to maintain the standard of living enjoyed during the marriage.

Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division

A-1264-23